CLERK OF STATE COI
GWINNETT COUNTY, GEOR
**22-C-01624·**
3/18/2022 5:48 |
TIANA P. GARNER, CLI

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

22-C-01624-S5

**Jovanni George**

PLAINTIFF

CIVIL ACTION
NUMBER:_____

VS.

**Bitumar (Georgia), Inc.**

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Robert M. Hammers, Jr.
Schneider Hammers, LLC
5555 Glenridge Connector Suite 975
Atlanta, Georgia 30342

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This **18th** day of **March**, 20**22**.

Tiana P. Garner
Clerk of State Court

By_____
Deputy Clerk

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

CLERK OF STATE CO
GWINNETT COUNTY, GEOF
**22-C-01624**
**3/18/2022 5:48**
TIANA P. GARNER, CL

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

|  |  |  |
|---|---|---|
| JOVANNI GEORGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 22-C-01624-S5 |
| v. | ) | CIVIL ACTION |
| | ) | FILE NO. _____ |
| BITUMAR (GEORGIA), INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Jovanni George, Plaintiff in the above-styled action, and files his

Complaint for Damages against Defendant Bitumar (Georgia), Inc., and shows this Court as

follows:

## PARTIES, JURISDICTION AND VENUE

1.

Plaintiff Jovanni George  is a resident of, a citizen of, and is domiciled in Newton

County, Georgia.

2.

Defendant Bitumar (Georgia), Inc. ("Bitumar") is a Delaware corporation, licensed to do

business in Georgia, with its principal place of business located at 7982 Huey Road,

Douglasville, Georgia 30134. Bitumar's registered agent for service of process is CT

Corporation System located at 289 S. Culver Street, Lawrenceville, Georgia 30046. When said

agent is served with copies of the Summons and Complaint in this matter, Defendant Bitumar

will be subject to the jurisdiction and venue of this Court. Defendant Bitumar has been properly

served in this matter.

## THE INCIDENT

### 3.

Defendant Bitumar owns, operates, and controls the asphalt refinery and supply facility ("Douglasville Facility") located at 7982 Huey Road, Douglasville, Georgia, in Douglas County, which is the location of the incident that is the subject of this Complaint.

### 4.

Defendant Bitumar is in the business of refining raw material into asphalt and supplying asphalt to contractors, generally in the business of road construction and roofing.

### 5.

One of Defendant Bitumar's customers is Lincoln Trucking, Inc. ("Lincoln"). Plaintiff Jovanni George is a Lincoln employee.

### 6.

On or about May 24, 2021, Mr. George arrived at the Douglasville Facility to acquire a tanker truck of asphalt product number 64-22: a very hot, toxic, and dangerous raw material. Defendant Bitumar knew then and knows now of the dangerous properties of the asphalt it sells.

### 7.

After arriving at the Douglasville Facility, Mr. George checked in at the guard station and submitted his paperwork to purchase a load of 64-22 asphalt for a customer. Defendant Bitumar's employee responsible for keying in the order information failed to input 64-22, and instead, Defendant's employee negligently input product 76-22 into the system that tells the refinery tanks which product to dispense to the customer.

8.

Mr. George then proceeding to the loading station, opened the tanker hatch, input his key card for the order, and dispensed the extremely hot asphalt into the tanker as he had on many occasions prior to May 24, 2021.

9.

After loading the truck with the 76-22 asphalt, Mr. George returned to the guard station to check out.  At or around that time, it was discovered Mr. George had loaded the wrong product. Defendant Bitumar instructed him to go to the unloading station to pump out the wrong 76-22 asphalt so that he could reload the tanker with the appropriate 64-22 asphalt.

10.

Mr. George received no training or instructions from Defendant Bitumar regarding how to safely unload asphalt products from his tanker. In fact, Mr. George was not supposed to even assist with unloading the asphalt according to Defendant Bitumar's own internal policies. Despite the policy and the lack of training and instructions, Defendant Bitumar instructed Mr. George to assist in the unloading process. Further, when he arrived at the unloading station and got out of his truck, Defendant Bitumar failed to supply Mr. George with personal protective equipment ("PPE") or require he use his own appropriate PPE before beginning the unloading process.

11.

At and around the time of the incident, Defendant Bitumar had written procedures and training materials for its own employees, including field operators responsible for the unloading process, but Defendant Bitumar never provided any training or materials to truckers like Mr.

George regarding the unloading process, the hazards of asphalt, and the type of PPE necessary to protect a person from injuries and/or illnesses caused by handling asphalt materials.

12.

Following Defendant Bitumar's instructions, Mr. George assisted field operators in unloading the wrong 76-22 asphalt from Mr. George's tanker by opening the tanker hatch and valve. Defendant Bitumar employees connected a camlock reducer and hose assembly to the tanker so that a pump could remove the asphalt. During the process, internal pump pressure began to rise, so Defendant Bitumar employees frantically instructed Mr. George to turn off the tanker valve. As he attempted to close the valve, the camlock reducer failed and exploded, sending piping hot black asphalt spewing out from the failed hose. The gush of liquid flowed onto his skin, into his eyes, and was breathed into his body forcing him to endure scalding hot asphalt burning his body. After being hit with the hot, spewing asphalt, Mr. George fell to the ground screaming until Defendant Bitumar employees could douse him with cold water.

13.

The camlock reducer fitted to the hose assembly connecting the tanker to the pump system failed because Defendant Bitumar abused the product, failed to properly maintain it, and/or failed to regularly inspect it for damage or comprised conditions.

14.

Neither Mr. George nor Lincoln were responsible in any way for coding the wrong product for dispersal, the camlock reducer failing, and being unable to stop the spiking internal pressure of the pump due to the lack of an internal relief valve within the pump.

- 4 -

15.

Neither Mr. George nor Lincoln were responsible in any way for ensuring Defendant Bitumar followed its own internal policies and procedures for unloading asphalt, failing to provide training and instructions to truckers like Mr. George regarding the hazards of asphalt and proper safety procedures, and allowing Mr. George in the unloading zone during the unloading process, especially without proper PPE.

16.

Neither Mr. George nor Lincoln could have, through the exercise of ordinary care, known that the camlock reducer was compromised from abuse and neglect as well as that the pump had no internal relief valve to decrease pressure in a crisis situation before Mr. George began assisting Defendant Bitumar employees with the unloading process.

17.

Mr. George's injuries were not proximately caused by his actions or inactions.

18.

Mr. George's injuries were not proximately caused by the actions or inactions of Lincoln.

## COUNT I – NEGLIGENCE

19.

Mr. George realleges and incorporates herein the allegations contained in paragraphs 1 through 18 above as if fully restated.

20.

Defendant Bitumar was responsible for properly inputting the correct product into the asphalt loading system before Mr. George began loading the asphalt into his tanker.

21.

Defendant Bitumar was responsible, in whole or in part, for:

(a)     Inputting the correct asphalt product into the computerized loading system;

(b)     Ensuring all truckers and other personnel not employed by Defendant Bitumar on the premises followed safe loading and unloading procedures established by the company, including providing or requiring personnel to wear appropriate PPE;

(c)     Inspecting, maintaining, and replacing the camlock reducer and hose assembly used during the unloading process; and

(d)     Enforcing company policies and procedures preventing personnel other than Defendant Bitumar employees from assisting in the unloading process.

22.

Defendant Bitumar was aware of the dangerous nature of hot asphalt and knew the severe consequences that could result if it came into contact with a person.

23.

Defendant Bitumar knew or should have known that if pressure built up in the pump during the unloading process that the pump system had no internal relief valve and that the camlock reducer and hose assembly could fail if it was not properly maintained and regularly inspected for damage.

24.

Defendant Bitumar knew that if proper PPE was not required and used that a person coming into contact with hot asphalt could suffer severe injuries from burns.

25.

Defendant Bitumar knew that the unloading process was dangerous and should only be performed by trained and authorized field operators.

26.

Defendant Bitumar was negligent and was the factual cause of the injuries, harm, damages, and losses of Mr. George in that Defendant Bitumar:

(a)     Failing to input the correct asphalt product into the computerized loading system;

(b)     Not ensuring all truckers and other personnel not employed by Defendant Bitumar at the Douglasville Facility followed safe loading and unloading procedures established by the company, including providing personnel with correct PPE and requiring it be worn;

(c)     No having an internal relief valve within the pump system;

(d)     Not inspecting, maintaining, and replacing the camlock reducer and hose assembly used during the unloading process; and

(e)     Not enforcing company policies and procedures preventing personnel other than trained Defendant Bitumar field operators from assisting in the unloading process.

## COUNT II – PREMISES LIABILITY

27.

Mr. George realleges and incorporates herein the allegations contained in paragraphs 1 through 18 above as if fully restated.

28.

Defendant Bitumar is the owner and occupier of the Douglasville Facility where Mr. George was injured.

29.

Under O.C.G.A. § 51-3-1, Defendant Bitumar must keep its premises safe for people who come onto its property for any lawful purpose.

30.

At all times material hereto, Defendant Bitumar knew, or by the exercise of due diligence could have or should have known, that the camlock reducer was damaged and not fit for its intended purpose, that Mr. George was not permitted to be in the unloading area during unloading process, and that anyone that may come in contact with hot asphalt should wear appropriate PPE.

31.

At all times material hereto, Defendant Bitumar negligently failed to exercise due care to properly maintain, inspect, and repair or replace any damaged or compromised camlock reducer and hose assembly.

32.

At all times material hereto, Defendant Bitumar negligently failed to warn invitees that a danger existed on the premises and negligently failed to alert Mr. George to the dangerous hot asphalt that would severely burn him if he entered the unloading area after pressure escalated in the pump system during the unloading process.

33.

At all times material hereto, Mr. George exercised ordinary care in looking out for his own safety.

34.

At all times material hereto, Mr. George could not, through the exercise of ordinary care

for his own safety, know the risk associated with the pump having no internal relief valve and/or

determine if the camlock reducer and hose assembly were not safe for their intended use when

asked by Defendant Bitumar to assist in the unloading process.

35.

Defendant Bitumar was negligent and was the factual cause of the injuries, harm,

damages, and losses of Mr. George in that Defendant Bitumar failed to keep its premises

reasonably safe for Mr. George.

## COUNT III – NEGLIGENT HIRING, RETENTION, AND SUPERVISION

36.

Mr. George realleges and incorporates herein the allegations contained in paragraphs 1

through 18 above as if fully restated.

37.

Defendant Bitumar owed a duty to exercise ordinary care in hiring, retaining, qualifying,

and supervising its employees working with truckers loading and unloading asphalt.

38.

Defendant Bitumar owed a duty to exercise ordinary care in hiring and retaining qualified

individuals to properly perform the job duties associated with loading and unloading asphalt.

39.

Defendant Bitumar failed to exercise ordinary care in hiring, retaining, qualifying, and

supervising its employees by failing to instruct, train, and warn truckers and other customers

regarding safe loading of asphalt, the proper use of PPE, and to avoid the hazardous area during the unloading process.

40.

Defendant Bitumar violated its own policies in hiring, retaining, qualifying, and supervising its employees involved in the asphalt loading and unloading procedures.

41.

Defendant Bitumar was negligent in failing to properly train its employees on how to safely load and unload asphalt in the Douglasville Facility to ensure they were competent to perform the duties of their position.

42.

Defendant Bitumar was negligent in failing to properly supervise its employees and failed to correct dangerous conditions which posed a foreseeable risk of danger to Mr. George.

43.

Defendant Bitumar negligently refused to adopt and follow appropriate policies and procedures related to safely loading and unloading asphalt.

44.

Defendant Bitumar was negligent and was the factual cause of the injuries, harm, damages, and losses of Mr. George in that Defendant Bitumar failed to enforce its own policies and properly hire, train, retain, and supervise its employees on safe loading and unloading procedures.

## INJURIES AND COMPENSATORY DAMAGES

45.

Mr. George realleges and incorporates herein the allegations contained in paragraphs 1 through 18 above as if fully restated.

46.

Mr. George suffered catastrophic, severe, and permanent injuries as a direct and proximate result of his prolonged exposure to the hot asphalt. Among other things, Mr. George has suffered—and continues to suffer from—severe burns to his body (including his face, ears, neck, hands, and legs) requiring debridement and grafts. Mr. George has also suffered damage to his lungs, damage to his eyes, scarring, redness, loss of sensation, and permanent physical disfigurement.

47.

As a direct and proximate result of the Defendant Bitumar's negligence, Mr. George has endured severe pain and suffering, including mental and emotional pain and suffering.

48.

As a direct and proximate result of the Defendant Bitumar's negligence, Mr. George has incurred significant medical expenses, suffered loss earnings, and Mr. George will continue to incur these loses for years to come, if not for the rest of his life.

## ATTORNEYS' FEES AND EXPENSES PURSUANT TO O.C.G.A § 13-6-11

49.

Mr. George realleges and incorporates herein the allegations contained in paragraphs 1 through 18 above as if fully restated.

50.

Defendant Bitumar's actions evidence a species of bad faith, and Defendant Bitumar was and is stubbornly litigious and has caused Plaintiff Jovanni George undue expense. Thus, Mr. George is entitled to recover his necessary expenses of litigation, including an award of reasonable attorney's fees and expenses required by this action, pursuant to O.C.G.A. § 13-6-11, as well as any other statutory or common law basis.

## PUNITIVE DAMAGES

51.

Mr. George hereby incorporates and realleges all preceding statements and allegations in Paragraphs 1 to 51 of this Complaint as if expressly set forth herein.

52.

Defendant Bitumar demonstrated gross neglect and an entire want of care evidencing a reckless indifference and conscious disregard to the consequences of its actions, which included an extreme degree of risk. Plaintiff Jovanni George is entitled to an award of punitive damages to deter Defendant Bitumar from such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Mr. George prays for the following relief:

(a)   That Mr. George recover all legally compensable damages that were inflicted by Defendant Bitumar, which he suffered in the past and he will continue to suffer in the future, including but not limited to, compensation for physical pain, emotional distress, mental anguish, disfigurement, physical impairment, lost wages, lost earning capacity, pecuniary loss, medical expenses, property damage, and any additional damages, including attorneys' fees;

(b)   That punitive damages be awarded against Defendant Bitumar in an amount sufficient to punish them for the harm caused by their reckless disregard for the consequences of its actions and to deter it from similar future misconduct;

(c)   That Mr. George recover his reasonable attorneys' fees and expenses of litigation authorized by O.C.G.A. § 13-6-11;

(d)     That Mr. George recover pre-judgment and post-judgment interest as allowed by

        applicable law;

(e)     That Mr. George recover his costs of suit;

(f)     That Mr. George have a trial by jury; and

(g)     For such other and further relief as the Court deems just and proper.

Respectfully submitted this 18th day of March, 2022.

                                        _/s/ Robert M. Hammers, Jr._
                                        Robert M. Hammers, Jr.
                                        Georgia Bar No. 377211
                                        Christopher Carter
                                        Georgia Bar No. 529712
                                        *Attorneys for Plaintiffs*

SCHNEIDER HAMMERS LLC
5555 Glenridge Connector
Suite 975
Atlanta, Georgia 30342
(770) 900-9000

                                        _/s/ Katherine Edwards-Opperman_
                                        Katherine Edwards-Opperman
                                        Georgia Bar Number 241460
                                        *Attorney for Plaintiff*

MONTLICK & ASSOCIATES, P.C.
17 Executive Park Drive
Suite 300
Atlanta, Georgia 30329
(404) 235-5000

**General Civil and Domestic Relations Case Filing Information Form**

CLERK OF STATE COU[...]
GWINNETT COUNTY, GEOR[...]
**22-C-01624-**
3/18/2022 5:48 [...]
TIANA P. GARNER, CLE[...]

☐ Superior or ☒ State Court of _Gwinnett State Court_ _____ **County**

| For Clerk Use Only | | 22-C-01624-S5 |
|---|---|---|
| **Date Filed** _____ **MM-DD-YYYY** | **Case Number** _____ | |

**Plaintiff(s)**
George, Jovanni

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**
Bitumar (Georgia), Inc.

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** _Robert M Hammers_ _____ **State Bar Number** _337211_ **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☒ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____ **Case Number** _____ **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

CLERK OF STATE COU[...]
GWINNETT COUNTY, GEOR[...]
**22-C-01624-**
3/18/2022 5:48 [...]
TIANA P. GARNER, CLE[...]

## General Civil and Domestic Relations Case Filing Information Form

☐ Superior or ☑ State Court of  Gwinnett _____ County

| For Clerk Use Only | |
|---|---|
| | 22-C-01624-S5 |
| Date Filed _____ | Case Number _____ |
| **MM-DD-YYYY** | |

**Plaintiff(s)**

Jovanni   George

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**

Bitumar (Georgia) Inc.,

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** Rob M. Hammers _____   **Bar Number** 377211 _____   **Self-Represented** ☐

### Check One Case Type in One Box

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☑ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____   _____
**Case Number**       **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.
_____
_____

Version 1.1.18

CLERK OF STATE CO'
GWINNETT COUNTY, GEOF
**22-C-01624**
**3/18/2022 5:48**
TIANA P. GARNER, CLI

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

JOVANNI GEORGE,                          )
                                         )
    Plaintiff,                           )
                                         )
v.                                       )     CIVIL ACTION      22-C-01624-S5
                                         )     FILE NO. _____
BITUMAR (GEORGIA), INC.,                 )
                                         )
    Defendants.                          )
_____ )

## PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT

    TO: Bitumar (Georgia), Inc.

    Pursuant to O.C.G.A. §§ 9-11-33 & 34, Plaintiffs hereby request that Defendant respond separately in writing and under oath as provided by law, with a copy of the responses being served upon the undersigned counsel of record for Plaintiff at Schneider Hammers LLC located at 5555 Glenridge Connector, Suite 975, Atlanta, Georgia 30342 within forty-five (45) days of service of this written discovery served contemporaneously with the Summons and Complaint. Please include the text of each question/request prior to each response.  Plaintiffs will do the same in response to Defendant's discovery requests.  To facilitate this, Plaintiff will also provide an electronic copy of this discovery upon request.

### DEFINITIONS AND INSTRUCTIONS

    A. These discovery requests shall be deemed continuing to the extent permitted by O.C.G.A. § 9-11-26, *et seq.*, and O.C.G.A. § 24-10-26, *et seq.*, so as to require Defendant to serve or produce upon all parties supplemental answers or documents if Defendant or its attorneys obtain further information between the time the answers are served and the time of

trial. Plaintiff also requests that Defendant produce the originals of each document at trial and any deposition of Defendant or its agents or employees.

B. Each Request is addressed to the personal knowledge of the Defendant, as well as to the knowledge and information of Defendant's attorneys, investigators, agents, employees, and other representatives. If Defendant is unable to comply with a Request completely, the Request should be produced as fully as possible. When a Request is directed to Defendant, the Request is also directed to the aforementioned persons. These Requests shall be deemed continuing, and you are under a duty to seasonably supplement or amend a prior response.

C. "Douglasville Facility" means the premises located at 7982 Huey Road, Douglasville, Georgia 30134 owned and operated by Defendant.

D. "Subject Incident" means the circumstances and events of May 24, 2021 at the Douglasville Facility where during the asphalt unloading process the pressure began to rise in the pump causing the camlock reducer and hose assembly used in unloading to, explode, and severely burn Plaintiff Jovanni George.

E. "Person" means any natural person, corporation, partnership, association governmental entity, agency, group, organization, etc.

F. If a requested document is no longer in your possession, custody or control, please identify the document with specificity. If no such information exists to comply with a particular Request, please state that fact. Failure to state that fact will, when that fact is proven, result in an abusive litigation claim.

G. If you object to part of a request, please identify any information or documents withheld containing all information required by Georgia law. If you object to the scope or time

2

period of the request, please answer the request for the scope or time period you believe is appropriate and include all basis or bases for imposing a limited scope to the request.

H.  If work-product or attorney-client privilege is claimed as to any document or any information responsive to these requests, please identify the information or document(s) to which a privilege is claimed with such particularity and in such a manner that the Court, and not defense counsel unilaterally, may determine whether the document or information is indeed entitled to privileged status.  To support a claim of privilege, for each responsive document to which a privilege is claimed, provide a privilege log setting forth a general description of the document, the author of the document, the recipients of the document (including "cc's"), the date the document was prepared, and the privilege claimed.

## **INTERROGATORIES**

1.

Do you contend that some other person or company, in whole or in part, is liable to Plaintiff in this matter or is liable, in whole or in part, to you?  Please state "yes" or "no."  If your answer is in any way in the affirmative, state the full name, address, and telephone number of that person or company and the specific basis for any such contention(s).

2.

Do you contend that Plaintiff was guilty of any act(s) or failure(s) to act that played any part in causing the injury or damage complained of in the Complaint?  If so, state each specific act (or failure to act) by Plaintiff or any other person that you claim supports your contention.

3.

Describe in detail how you contend the Subject Incident occurred.

3

4.

Identify any and all persons, by name and address, whom you know, or suspect witnessed the subject incident, or came upon the incident scene while the Plaintiff was still present.

5.

Identify all employees, by name, address, current employer, and telephone number all employees employed by the Defendant on May 24, 2021 when Plaintiff was injured at the Douglasville Facility. For each such person, state the person's complete name, last known home address, last known home phone, his or her dates of employment with you, and job description.

6.

State the name, current address and telephone number of all other persons (excluding your attorney(s) and any expert) who to your knowledge, information or belief possess any knowledge concerning either the subject incident or the cause(s) of the subject incident involved herein, one or more of Plaintiff's claims, or one or more of your defenses to Plaintiff's Complaint. For each such person, specify the subject matter(s) about which you know or believe that person to have knowledge and the basis of that person's knowledge.

7.

Identify any and all expert witnesses you expect to call at the trial of this matter (as defined above), providing for each such expert the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion.

8.

Have you taken, or are you aware of, or have you obtained, any statement, be it oral or in writing, from the Plaintiff, any witness or other person purporting to have knowledge of any

4

aspect of the Subject Incident?  If so, identify the name of the person who gave the statement, state what was said by such person and state the name, address, and telephone number of anyone who overheard the statement or has possession, custody, or control of such statement, transcript, or summary of such statement.

9.

Please provide the name of the manufacturer, serial number, and product description of the specific camlock reducer involved in the Subject Incident.

10.

Please provide the name of the manufacturer, serial number, and product description of the specific hose involved in the Subject Incident.

11.

Please provide the name of the manufacturer, serial number, and product description of the specific pump involved in the Subject Incident.

12.

Describe any inspections conducted of the area in which Plaintiff was injured before or after the Subject Incident and identify when said inspections occurred and the identity of all employees, agents, third-parties or other persons involved in such inspection and describe the findings.

13.

Describe in detail any conversations you or any of your agents or employees had with Plaintiff following the Subject Incident.

5

14.

Was an investigation or report made by you or on behalf of you, your representatives, attorneys, or insurers, of or relating to the incident made the basis of this lawsuit? If your answer is in any way in the affirmative, as to each such investigation or report, please state the name, address, job title and description, and telephone number of the person(s) who participated in such investigation or report and who have received and/or currently have custody or control of any written report or other documentation of the investigation.

15.

State whether or not any loading/unloading protocol(s), process(es), policy(ies) and/or procedure(s) were in effect at the Douglasville Facility on the date of the Subject Incident and describe the protocol(s), process(es), policy(ies), and/or procedure(s) and identify any company documents that describe said protocol(s), process(es), policy(ies) and/or procedure(s).

16.

State whether there are one or more policies of insurance extending coverage to you or whether you are a party to or beneficiary of any agreement or contract, by which any person is or may be obligated to satisfy all or part of any judgment which may be entered in this action, or to indemnify or reimburse any person for any cost, expense or payment made in connection with this action. If so, for each such policy of insurance, agreement or contract (specifying which), state the name and current address of each person who is a party or beneficiary (specifying which), the effective dates or date of execution, the substance and content, the applicable limits of liability coverage, and the name and current address of the person(s) having possession thereof.

6

17.

Were there video cameras in place at the Douglasville Facility on the date of the Subject Incident? If so, state the following:

    (a)    Were the cameras operating on the date of the incident?

    (b)    The location of each camera in the subject area and what each camera filmed.

    (c)    Did any camera film the area where Plaintiff was injured?

    (d)    Was the videotape(s) reviewed to see if it filmed the incident? If so, by whom and when?

    (e)    If any such videotape(s) exist, state the current location and custodian.

18.

What is your protocol for retaining videotapes?

    (a)    In the ordinary course of business?

    (b)    In the event of an incident such as an injury on the premises that may lead to a claim being presented to you?

    (c)    Who was responsible for implementing this protocol at the Douglasville Facility on May 24, 2021?

    (d)    Please identify each and every person who examined any video surveillance of the Subject Incident.

19.

Please identify all prior injury accidents at the Douglasville Facility for the three year time period prior to the Subject Incident. "Identify" means to identify the date of the injury, the person(s) involved, the reason for the injury, and whether any Occupational Safety and Health Administration ("OSHA") action was taken.

20.

Please describe all of Defendant's policies and procedures governing the following subjects:

(a)   maintenance of the camlock reducers and hose assemblies;

(b)   maintenance of the unloading pump systems;

(c)   inspections of the camlock reducers and hose assemblies;

(d)   inspections of the unloading pump systems;

(e)   reporting problems with any camlock reducers and hose assemblies;

(f)   reporting problems with the unloading pump systems;

(g)   schedule or protocol for replacing camlock reducers and hose assemblies; and

(h)   schedule or protocol for replacement of unloading pump systems.

21.

Specify what you contend Jovanni George was doing immediately prior to and at the time of the Subject Incident, including specifying who instructed Jovanni to undertake such action, when and why such instruction was given, who was controlling and directing his actions, and who had authority to discharge him from such action.

22.

Identify any training Jovanni George received from Defendant.

## REQUEST FOR PRODUCTION

1.

Any and all agreements, contracts, policies, procedures, correspondence, or documents of any sort pertaining to Lincoln Trucking, Inc. and Bitumar (Georgia), Inc.

2.

Any and all rules, regulations, policies, or procedures developed or implemented by Defendant specifically applicable to truckers like Plaintiff and Lincoln Trucking, Inc.

3.

Any corporate organization chart listing Defendant.

4.

Documents which describe Defendant's purpose, responsibilities, function, and business activities.

5.

This Defendant's employee roster(s) or list(s) from 2020 to present.

6.

A full, complete, and unredacted copy of the full OSHA report pertaining to the investigation, conclusions, and citations performed and completed by the OSHA investigator regarding the Subject Incident.

7.

Any and all non-privileged internal communications regarding the Subject Incident, including, but not limited to, correspondence, memorandum, e-mails, text messages, instant messaging, and software platforms used by Defendant for internal customer resource management. For any and all communications being withheld on the grounds of attorney-client privilege and/or work-product objections, please produce a privilege log in accordance with the instructions *supra*.

8.

Any and all non-privileged external communications regarding the Subject Incident, including, but not limited to, correspondence, memorandum, e-mails, text messages, instant

9

messaging, and software platforms used by Defendant for internal customer resource management. For any and all communications being withheld on the grounds of attorney-client privilege and/or work-product objections, please produce a privilege log in accordance with the instructions *supra.*

9.

Any and all capital expenditures and/or proposals for capital expenditures to repair, replace, or improve the Douglasville Facility.

10.

All documents which reflect the relationship between Defendant and Lincoln Trucking.

11.

The incident report regarding the Subject Incident. This includes, but is not limited to, the report itself, any and all drafts, and any and all ancillary documents, such as video(s), photograph(s), diagram(s), chart(s), illustration(s), reconstruction(s), etc.

12.

All documents reflecting policies, procedures, or rules for employees, contractors, customers, and agents who engage in the type of work taking place at the time of and in the area of the Subject Incident.

13.

All policies and procedures which pertain to communicating the hazards associated with bituminous products refined, supplied, and sold by Defendant to any employee, agent, contractor, and/or customer for the Douglasville Facility, including, but not limited to, Safety Data Sheet ("SDS") for PG 76-22 and PG 64-22.

14.

All work orders, requests for maintenance, repair records, or other similar documents which relate to the subject camlock reducer, hose assembly, unloading pump, or area of the premises involved in the Subject Incident.

15.

All procedure manuals, memos, instruction manuals, rules, and other writings (and electronic files) that pertain to the maintenance, handling, inspection, safe operation, or upkeep of:

(a) equipment such as the camlock reducer and hose assembly involved in the Subject Incident;

(b) equipment such as the unloading pump involved in the Subject Incident;

(b) the Douglasville Facility generally, and/or of the specific area where the Subject Incident took place; or

(c) any truck driver training manuals provided to Plaintiff prior to the date of the Subject Incident.

16.

All and all documents (including electronic files) reflecting any investigation into the Subject Incident, _except_ for materials generated by litigation counsel in this matter.

17.

All procedure manuals, memos, instruction manuals, rules, and other writings (and electronic files) that pertain to the loading and unloading process/procedures.

18.

A copy of the OSHA injury report regarding the Subject Incident.

19.

Any and all OSHA 300 Logs from 2016 to the present.

20.

Any and all HAZCOM training records (including electronic files) from 2016 to the present.

21.

A copy of Defendant's Emergency Action Plan ("EAP") in effect on the date of the Subject Incident.

22.

A copy of Defendant's Corporate Safety Program.

23.

A copy of Defendant's Hazard Communication Plan.

24.

A copy of Chief Operator Job Description.

25.

A copy of the Corporate Occupational Environmental Health & Safety ("EH&S") Program.

26.

A copy of the Hazardous Secondary Material Contingency Plan ("HSMCP").

27.

A copy of the Fire Response Plan ("FRP").

28.

A copy of the Facility Specific Response Plan ("FSRP").

29.

Any and all documents, diagrams, maps, schematics, plans, or drawings of the Douglasville Facility.

30.

All procedure manuals, memos, instruction manuals, videos (including electronic files) that pertain to workplace safety and personal protective equipment ("PPE").

31.

Any documents (including electronic files) reflecting or involving repairs and/or capital improvements that were made or considered, whether implemented or not, in the five (5) years before the Subject Incident.

32.

Any documents reflecting changes or alterations to the subject unloading area, including repairs and/or capital improvements that were made or considered, after the Subject Incident. This includes but is not limited to installing hose assembly poles.

33.

Any documents reflecting consideration of any changes to the equipment involved in the unloading processes in the area where the Subject Incident occurred. Specifically, any document concerning new or different camlock reducers, hoses, and pumps, whether such new equipment was actually purchased or not.

34.

Any documents sufficient to show the name and contact information of any and all permanent, contract, and temporary works including truckers who performed work at the Douglasville Facility on May 24, 2021.

35.

Any safety inspections of the Douglasville Facility by any third-parties.

36.

Any documents pertaining to and/or in regards to maintenance records at the Douglasville Facility from January 1, 2016 to the present. Specifically, for the P311 Unloading/Loading Rack and the P112 Loading/Unloading Racks.

37.

All e-mails or other electronically stored information relating to:

(a)     The Subject Incident;

(b)     Plaintiff Jovanni George;

(c)     Safety hazards in the Unloading/Loading Racks at P311 and/or P112;

(d)     Keying product codes in at the guard station;

(e)     The condition of the camlock reducer and hose assembly at issue;

(f)     The need for repairs to camlock reducer and hose assembly at issue;

(g)     The need for an internal relief valve in the pump at issue; and

(h)     The potential or need for better processes in the Unloading/Loading Racks at P311 and/or P112.

38.

Any documents sufficient to show a list of hazardous chemicals used on site, including copies of all SDS, labeling requirements, storage requirements, and proof of employee training on said program(s).

39.

Any documents sufficient to show Defendant's written assessment for the use of PPE, and conditions that its use and proof of employee/temporary employee/trucker training on said program.

40.

Any documents sufficient to show any and all of Defendant's Job Safety Hazard Analysis ("JSA") related to pumps used in loading/unloading of tanker truck trailers.

41.

All documents reflecting or pertaining to the purchase, repair, sale or maintenance of any pumps at the Douglasville Facility, including, but not limited to, any documents sufficient to show any install, repair, or replacement of any pump system performed to address the lack of an internal relief valve.

42.

All documents which relate to the purchase, rental, maintenance, inspection, or use of the pump system involved in the Subject Incident.

43.

All photographs or video(s) that relate to the Subject Incident or area of the Douglasville Facility involved.

44.

All documents which discuss or reflect policy or procedure changes after the Subject Incident designed to prevent a similar incident from occurring in the future.

45.

All data, media, and testing results related to the Subject Incident, including, but not limited to, those performed on the camlock reducer, the hose assembly, and the stainless steel braiding performed by Defendant or on its behalf by Applied Technical Services ("ATS") Laboratories.

46.

All photographs, videos, diagrams, and testing results regarding the Subject Incident from any other source or third party, including but not limited to, ATS.

47.

All correspondence between Defendant, ATS, and/or any third party (other than litigation counsel for this matter) relating to the Subject Incident.

48.

All witness statements relating to the subject incident.

49.

Any claims or suits alleging serious personal injury (requiring hospitalization) or death on the premises from 2016 to the present.

50.

All claim forms, incident reports, or other documentation evidencing prior or subsequent fires, explosions, or asphalt-related injuries occurring at the Douglasville Facility.

51.

A true and exact copy of the unaltered loading/unloading training requirements provided to Lincoln Trucking, Inc., and a copy of the altered copy provided to OSHA of the same loading/unloading training requirements provided to Lincoln Trucking, Inc.

52.

All OSHA inspections, fines, penalties, findings, or assessments pertaining to the Douglasville Facility from 2016 to the present.

53.

Copies of any and all reports, inner-office memoranda, or other documents relating to matters which are the subject of this Complaint which were prepared in the normal course of business.

54.

Copies of any and all insurance policies and related documents, including the declaration pages, which do or may afford liability insurance coverage to Defendant(s) with regard to Plaintiffs' claims. This request includes primary insurance coverage, excess insurance coverage, or any other type of liability insurance coverage, medical-payments coverage, and documents regarding reservation of rights for same.

55.

All documents evidencing, reflecting, relating to, or constituting any communication between any Defendant and Plaintiff.

56.

All documents that you receive in response to your Requests for Production of Documents to Nonparties.

57.

All reports received from any experts who have investigated any issue relevant to the Subject Incident and relevant to this lawsuit. Also, produce all materials relied upon by each expert in formulating their opinions and conclusions.

58.

Any rule, policy, procedure, or directive you contend Plaintiff violated which you contend caused or contributed to the subject incident.

Respectfully submitted,

*/s/ Robert M. Hammers, Jr.*
Robert M. Hammers, Jr.
Georgia Bar No. 377211
Christopher Carter
Georgia Bar No. 529712
*Attorneys for Plaintiffs*

SCHNEIDER HAMMERS LLC
5555 Glenridge Connector
Suite 975
Atlanta, Georgia 30342
(770) 900-9000

*/s/ Katherine Edwards-Opperman*
Katherine Edwards-Opperman
Georgia Bar Number 241460
*Attorney for Plaintiff*

MONTLICK & ASSOCIATES, P.C.
17 Executive Park Drive
Suite 300
Atlanta, Georgia 30329
(404) 235-5000